AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
Southern District of Ohio

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | Case No. **1:23-MJ-00395** |
| *or identify the person by name and address)* | ) | |
| | ) | |
| Cellular telephone assigned call number 513-668-6630, | ) | |
| with IMSI: 310410262344029 and IMEI: | ) | |
| 3538901085912822 | ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Southern _____ District of _____ Ohio _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2251 | Sexual Exploitation of Children |
| 18 U.S.C. § 1591 | Sex Trafficking of Children |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

☑ Delayed notice of __30__ days *(give exact ending date if more than 30 days:* _____ *) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Nathan Holbrook*
_____
*Applicant's signature*

Nathan Holbrook, Special Agent FBI
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ FaceTime video conference _____ *(specify reliable electronic means)*.

Date: __**May 12, 2023**__

*Stephanie K. Bowman*
_____
*Judge's signature*

City and state: Cincinnati, Ohio

Stephanie K. Bowman, United States Magistrate Judge
_____
*Printed name and title*

## <u>ATTACHMENT A</u>

**Property to Be Searched**

1. The cellular telephone assigned call number **513-668-6630, with IMSI: 310410262344029 and IMEI**: **3538901085912822,** with listed subscriber(s) **Shoo Shells (**the "Target Cell Phone"), whose wireless service provider is **AT&T Wireless**, a company headquartered at **11760 U.S. Highway 1, Suite 300, North Palm Beach, FL 33408.** .

2. Records and information associated with the Target Cell Phone that is within the possession, custody, or control of **AT&T Wireless.**

## ATTACHMENT B

**Particular Things to be Seized**

### I.      Information to be Disclosed by the Provider

All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days, during all times of day and night.  "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of **AT&T Wireless**, **AT&T Wireless** is required to disclose the Location Information to the government.  In addition, **AT&T Wireless** must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with **AT&T Wireless**'s services, including by initiating a signal to determine the location of the Target Cell Phone on **AT&T Wireless**'s network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The government shall compensate **AT&T Wireless** for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information.  *See* 18 U.S.C. § 3103a(b)(2).

**II.        Information to Be Seized by the Government**

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 2251(a) & (e) Sexual Exploitation of Children and 18 U.S.C. § 1591(a)(1) & (b)(2) Sex Trafficking of Minors involving **Kelly Richards.**

All information described above in Section I that will assist in arresting **Kelly Richards**, who was charged with violating Title 18, U.S.C. §§ 1591 (Sex Trafficking of Children) and Title 18 U.S.C. § 2251 (Sexual Exploitation of Children) on today's date, and is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Nathan Holbrook, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number 513-668-6630 and International Mobile Subscriber Identity 310410262344029, with listed subscriber "Shoo Shells" (the "Target Cell Phone"), whose service provider is AT&T Wireless, a wireless telephone service provider headquartered at 11760 U.S. Highway 1, Suite 300, North Palm Beach, FL 33408.  The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein an in Attachment B.

2.      Because this warrant seeks the prospective collection of information, including cell-site location information, that my fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act.  *See* 18 U.S.C. §§ 3121 – 3127.  The requested warrant therefore includes all the information required to be included in an order pursuant to that statue. *See* 18 U.S.C. § 3123(b)(1).

3.      I am a Special Agent with the Federal Bureau of Investigation and have been since February 13, 2011.  In July 2011, I was assigned to the Indianapolis Division, Merrillville Resident Agency to work white collar crimes and public corruption investigations.  In joining the FBI as a Special Agent, I initially spent five months at the FBI training academy in Quantico, Virginia, where I studied numerous investigative techniques, including those involved in white collar/public corruption investigations.

4.     I was a member of the Northwest Indiana Public Corruption Task Force from August 2011 until December 2017.  This task force focused on public corruption investigations throughout Northwest Indiana and was comprised of several federal law enforcement agencies, including the FBI and the Internal Revenue Service (IRS).  As part of my duties while a member of this task force, I was involved in numerous public corruption investigations including investigations of elected public officials, non-elected government employees, and corrupt law enforcement officers.  In the course of these investigations, and through my involvement in other investigations with other experienced white collar/public corruption investigators, I have participated in white collar and/or public corruption investigations involving the use of Title III communication intercepts, confidential surreptitious undercover recordings, electronic tracking devices, pen registers and trap and trace devices, and various types of search warrants for GPS location information, government offices, and government computer systems.

5.     In January of 2018, I was transferred to the Cincinnati Division of the FBI and assigned to a white collar/public corruption unit, specifically to investigate public corruption in Southern Ohio to include bribery, extortion, and theft of funds from programs receiving government money.  Since my assignment to the Cincinnati Division, I have conducted or participated in public corruption investigations utilizing advanced techniques to include the use of: Undercover Agents; confidential human sources; consensual undercover recordings; Title III communication intercepts; physical surveillance; pen registers and trap and trace devices; and the analysis of financial records.

6.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, witnesses, and agencies.  This

affidavit is intended to show merely that there is sufficient probable cause for the requested warrant. It does not set forth all of my knowledge, or the knowledge of others, about this matter.

7. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Section 2251(a)(1) and (b)(2): Sexual Exploitation of Children, and has violated Title 18, United States Code, Section 1591(a)(1) and (b)(2): Sex trafficking of Minors have been committed by Kelly Richards and other persons unknown. Richards was charged with these crimes via criminal complaint on this date and is the subject of an arrest warrant issued on the same. There is probable cause to believe that the location information described in Attachment B will assist law enforcement in arresting Brown who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

8. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, see 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

9. In March of 2023, Investigators were told by the Anti-Human Trafficking Coordinator with the Hamilton County Juvenile Court, that two minor females had been screened as possible sex trafficking victims.

10. On March 16, 2023, Minor Victim 1 (hereafter referred to as MV1), date of birth XX/XX/2008, was interviewed by a forensic interviewer at Cincinnati Children's Hospital. MV1 was at a group home named Hope Haven for girls located in Dayton, Ohio. While at

Hope Haven, MV1 met Minor Victim 2 (hereafter referred to as MV2), date of birth XX/XX/2008. On approximately February 28, 2023, MV1 and MV2 ran away from Hope Haven. MV2 told MV1 they were just going around the block to smoke marijuana with a friend of MV1's, referred to as "Scorpio." MV1 and MV2 ran away from Hope Haven for about two blocks and waited approximately 15 minutes, but Scorpio did not arrive. They walked back to Hope Haven and MV2 knocked on her roommate's window for the purpose of having the roommate log onto Facebook to contact Scorpio. At approximately the same time, Scorpio drove by, eventually stopping and picking up MV1 and MV2. MV1 described Scorpio's vehicle as a tan or silver color sport utility vehicle. MV1 described Scorpio as a dark-skinned male with very short hair. He had a scorpion tattoo on his face with a piercing at the point of the scorpion tail. Scorpio drove MV1 and MV2 to an apartment complex in Cincinnati located at 1828 Sunset Avenue.

11. On March 22, 2023, investigators conducted surveillance in the area of 1828 Sunset Avenue, Cincinnati, Ohio and observed a large Infiniti SUV that fit the description of the vehicle Scorpio used to pick up MV1 and MV2. The vehicle had an Ohio license plate PLJ1198. The license plate number was searched in a police database and found to be associated with a 2009 Infiniti SUV and registered to Scorpio's One Stop Shop, LLC, 9125 Winston Road, Apartment 13, Cincinnati, Ohio. A search of the Ohio Secretary of State Business Search website showed Scorpio's One Stop Shop, LLC is registered to Kelly Richards (hereafter referred to as "Richards"), PO Box 428786, Blue Ash, Ohio, 45242. Investigators obtained a Bureau of Motor Vehicle's photograph of Richards. Richards fit the description provided by MV1 to include the scorpion tattoo on his face.

12.     Once inside Richards' apartment, MV1 was offered a plate that contained cocaine and she did a line.  MV1 said she was scared because she did not know where she was or what was going to happen to her.  Richards received a phone call from an individual MV1 referred to as "Bear."  Shortly after, Bear comes to Richards' apartment.  MV1 observed Richards sell cocaine to Bear.  Richards also retrieved two guns from his bedroom and gave them to Bear.

13.     Richards, MV1, and MV2 did additional lines of cocaine and then went into Richards' bedroom.  MV1 sat on the side of Richards' bed while MV2 and Richards had sex. After sex with MV2, MV1 said Richards made MV2 "touch me and eat me and stuff like that and it made me very uncomfortable."  MV1 said Richards told MV2 to "sixty-nine, eat me out and like to kiss me and stuff, to finger me."  MV2 was touching MV1's vagina with her tongue and placing MV2's fingers in MV1's vagina.  Richards eventually pushed MV2 off and engaged MV1 in vaginal sex.  Richards did not ask MV1 for consent to have sex with her.  Richards also made MV1 give him oral sex that same night.

14.     The following day, on or about March 1, 2023, they ordered pizza from LaRosa's. Investigators obtained an order receipt from LaRosa's dated March 1, 2023.  The receipt listed the customer's name as Scorpio with a telephone number of 513-668-6630 and address of 1828 Sunset Avenue, Cincinnati, Ohio.[1]   The receipt had an order time of 9:14 PM. Toll records indicated that telephone number 513-668-6630 called LaRosa's located at 4008 Glenway, Avenue, Cincinnati, Ohio at 9:10 PM on March 1, 2023.  The AT&T records also indicated the phone associated with telephone number 513-668-6630 was an Apple iPhone

---

[1] Subscriber information and toll records were obtained from AT&T by administrative subpoena for telephone number 513-668-6630.

11 Pro Max with IMEI number of 3538901085912822 and IMSI number of 310410262344029.

15.     On the same night, Richards told MV1 that if his friend "Lorenzo" wanted to have sex with her it would cost him $100.  MV1 asked Richards what if she did not want to have sex with Lorenzo.  Richards told MV1 to just do it because they needed the money.  MV1 described Lorenzo as an older male, approximately 57 years old.  Lorenzo came to Richards' apartment and asked MV1 to come to his (Lorenzo) apartment.  MV1 went with Lorenzo because she was scared not to do what Richards told her to do.  Lorenzo began taking off MV1's clothes, but she stopped him and said he would have to pay first before having sex with MV1.  Lorenzo agreed to give MV1 $30 in exchange for sex.  After the sexual encounter with Lorenzo, MV1 returned to Richards' apartment.  Richards was mad at MV1 because she took too long and only made $30.  Richards took the $30 and screamed at MV1.  MV1 said, "Scorpio (Richards) was making me, like, have sex with these people and get paid, and give him the money."

16.     On or about March 2, 2023, Richards obtained assistance from an unknown female who went by the name "Red."  Richards commented about how MV1 could make real money and asked Red if she could help out.  MV1 said Red was a prostitute and utilized an online application called "link finder or crawler" where girls advertised themselves for sex in exchange for money.  Richards wanted to post an ad online advertising MV1 and MV2 for prostitution.  Richards used an account that was associated with Red's boyfriend's daughter.  Richards used the account to post an advertisement, depicting photos of MV1 and MV2.  Red provided the account information to Richards.  MV1 remembered the account password was "starburst."  MV1 said Richards was the one who controlled everything.

17.     Richards' iPhone was used to take pictures of MV1 in the shower, which showed

MV1 undressed from her upper thighs to her neck, depicting MV1's breasts and vagina.

Additional photos were taken of MV1 laying down on Richards' bed showing her back.

MV1 believed the covers on Richards' bed were striped. None of the photos contained

MV1's face. The photos were used in the ad online advertising for sex.  Photographs of

MV2, which included her face, breasts, and backside were placed in an advertisement.  MV1

was referred to as "Essence" in the ad.  Richards received a lot of responses from the

advertisements.  MV1 said Richards had two phones, a red iPhone 7 or 8, and a red iPhone

11.[2]  MV1 said the account for the ad was on the iPhone 7 or 8.  The number on the ad

would go to Richards' iPhone 11.  MV1 believed Richards' iPhone service provider was

AT&T. Richards took photos of MV2 using his iPhone 11 and uploaded them to the ad.  The

photos of MV2 included her face and breasts.

18.     An unknown male (UM1) responded to the advertisement for MV1 saying he

would pay $125 for oral sex.  Richards and MV2 drove MV1 to meet UM1 at his residence.

MV1 said she was scared.  She didn't know anything other than "there's a dude who wanted

head and I had to do it."  MV1 gave UM1 oral sex in exchange for $120. MV1 told

investigators that MV2 had four dates consecutively the same day at both hotels and homes,

earning $365.  Richards referred to the dates as "licks." MV1 said the dates were set up by

individuals contacting a telephone number on the ad which would go to Scorpio's phone.

19.     On or about March 3, 2023, Lorenzo came over to Richards' apartment.  Lorenzo

wanted MV1 to come back over to his apartment. Richards told MV1 to go to Lorenzo's

apartment and try to make some money.  At Lorenzo's apartment, Lorenzo told MV1 to take

---

[2] In a follow-up interview with investigators, MV1 said the older iPhone might have been an iPhone 8 or 9.

off her clothes, but MV1 told Lorenzo he had to pay her first. MV1 and Lorenzo talked for approximately 45 minutes without engaging in sex. When MV1 returned to Richards' apartment without money, Richards screamed at her. Richards told MV1 to sit next to him which she did. Richards asked her why he shouldn't smack the shit out of her. MV1 responded that she did not know and stood up to walk away, at which point Richards struck MV1 on the back of the neck.

20.     MV2 was interviewed by investigators on April 6, 2023. MV2 had known Richards for approximately one year. MV2 contacted Richards to collect her and MV1 from Hope Haven via Facebook Messenger. Richards' Facebook account was Scor Pio.[3] MV2 said Richards picked them (MV1 and MV2) up from Hope Haven and drove them to his apartment. MV2 said Richards' apartment was located on Sunset Avenue in the Westwood area of Cincinnati, and specifically described the location of his apartment at the bottom of the stairs next to a laundry room. MV2 showed investigators a map of the location of Richards' apartment on her phone. The location was consistent with 1828 Sunset Avenue. While at the apartment, Richards had MV1 take photos of MV2 undressed. Scorpio placed the photographs in an advertisement and posted the ad on a website named "List Crawler." MV2 said List Crawler is used for prostitution. Richards used his cell phone to create the ad. MV2 said her name on the ad was "Carmel Candy" and MV1's name was "Essence."

21.     MV2 located and identified the ad that Richards created on List Crawler and showed it to investigators. The ad stated, "Pussy Wet & Head [fire emoji] You Bout To Love It Here One Or Two Girl Special." The ad listed a telephone number of 513-725-9361 to contact to set up an appointment. The females pictured in the ad were identified as

---

[3] MV2 showed investigators her Facebook communication with Scorpio from Facebook account "Scor Pio."

Essence and Carmel Candy. The ad included three photos and one video of MV2. Photos in the ad depicted MV2's face, breasts, and backside. The ad also included three photos of MV1. Two of the photos depicted MV1 laying on a red, white, and dark colored striped bed comforter. One of the photos depicted MV1 nude laying supine with her legs spread fully exposing her vagina and breasts, the other photo depicted MV1 laying prone with her right hip and knee flexed wearing a black top and black underwear. The third photo depicted MV1 from mid-thigh level to just below her neck, in a shower covered in what appeared to be soap, cupping her breasts. MV2 identified the telephone number on the ad, 513-725-9361, was the number Richards used to set up the dates.

22.     In April 2023, Investigators conducted a follow up interview with MV1. MV1 was shown a BMV photo of Richards. MV1 identified the photo of Richards as the individual she knew to be Scorpio. Investigators showed MV1 a photo of the 2009 Infiniti SUV registered to Scorpio's One Stop Shop, LLC. MV1 identified the vehicle as Richards' vehicle and it was the same vehicle that Richards initially collected MV1 and MV2 when they ran away from Hope Haven on February 28. In addition, MV1 told investigators Richards drove her in the Infiniti to meet UM1 to provide UM1 oral sex in exchange for money. Investigators showed MV1 a photograph of the apartment building located at 1828 Sunset Avenue, Cincinnati, Ohio. MV1 identified the apartment building as the residence of Richards. MV1 was shown a print out of the ad from List Crawler identified by MV2 and referenced above. MV1 identified herself and MV2 in the ad. MV1 told investigators the photos were taken in Richards' apartment located at 1828 Sunset Avenue. MV1 told investigators the photos of her laying on a bed were Richards' bed in his apartment. MV1 identified the blanket in the photograph as the blanket that was on Richards' bed. MV1 told

investigators that MV2 took the photo of her (MV1) in the shower at Richards' direction.
Richards took the photos of MV1 laying on his bed, including the photo of MV1 laying nude
in a supine position exposing her vagina and breasts. MV1 said all the photo of her were
taken with Richards' iPhone.

23. Investigators identified the telephone number used on the ad as a TextMe number.
Basic user information obtained from TextMe, Inc. for telephone number 513-725-9361 did
not identify Richards as the subscriber. Based upon my training and experience, I know that
individuals engaged in illegal activity often utilize fictitious or misleading subscriber
information to conceal their identity. However, the subscriber information identified that
telephone number 513-725-9361 was utilized by an iPhone 11 Pro Max, the same phone
associated with Richards' AT&T number found on the LaRosa's receipt. In addition,
Richards' AT&T number had two inbound calls to the TextMe number, one on February 28,
2023 at 10:49 pm and the other on March 1, 2023 at 2:19 am. The communication activity
on the TextMe number is consistent with the time frame in which Richards trafficked MV1
and MV2.

24. The last login to the TextMe account associated with telephone number 513-725-
9361 was on April 6, 2023 from IP address 2603:6010:b600:918f:3008:848c:6e27:c8bc. On
April 24, 2023, in response to an administrative subpoena, Charter Communications advised
the above referenced IP address was assigned to the account of Kelly Richards at 1828
Sunset Avenue, apartment 26C, Cincinnati, Ohio, telephone number 513-668-6630.

25. MV2 told investigators that Richards sells fentanyl, cocaine, and marijuana.
Richards gave cocaine to MV2. MV2 said Richards hid his drugs in a drawer underneath a
fish tank. MV2 also saw guns at Richards' apartment.

26.     MV2 told investigators that Richards took her to a hotel MV2 referred to as the "Budget" where he had arranged for males to come to the hotel and engage in sex with MV2 in exchange for money. MV2 did not remember the name of the hotel, but remembered there was another hotel right next to it.  MV2 believed the hotel was close to a White Castle restaurant.   MV2 said they made her lay down and did things to her and she had to give the money to Richards. MV2 also told investigators Richards would take her to houses.  She would go into the houses and they would do what they wanted to her, after which she would go back to Richards' car and he would take the money.  When asked what they wanted to do to her, MV2 said they "just wanted to fuck."  Richards had another person pay for the hotel rooms.

27.     MV2 showed investigators text communication she had with Richards over Facebook Messenger.  On March 18, 2023, Richards sent the following message to MV2, "Sup man you know hella people keep calling for you."  MV2 said Richards was referencing individuals calling the number on the ad for dates.  On March 20, 2023, Richards sent the following message to MV2: "I'm waiting to grab this room" and "I'm calling around now."  MV2 said Richards was talking about a hotel.  MV2 asked where he was at and Richards responded, "Sharonville."[4]  Later in the same conversation, Richards sent the following message to MV2, "Waiting to see if somebody show up."  MV2 told investigators that Richards was referring to someone from the ad.  MV2 responded, "ok hit me up ok?" then Richards text, "Not long."

---

[4] It is known to investigators that Sharonville is an area that contains hotels utilized for prostitution.

28.     Based upon the information provided by MV1 and MV2, and my training and experience, and through conversations with other experienced investigators, it is believed Richards utilized MV1 and MV2 for the purposes of sex trafficking.

29.     In my training and experience, I have learned that AT&T Wireless is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data , also known as GPS data or latitude-longitude data and cell-site data, also knowns as "tower/face information" or cell tower/sector records.  E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.  Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site is typically less precise that E-911 Phase II data.

30.     Based on my training and experience, I know that AT&T Wireless can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on AT&T Wireless's network or with such other reference points as may be reasonably available.

31.     Based on my training and experience, I know that AT&T Wireless can collect cell-site data about the Target Cell Phone.  Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication.  I also know that wireless providers such as AT&T Wireless typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

### AUTHORIZATION REQUEST

32.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

33.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed.  There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution.  See 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property.  See 18 U.S.C. §

3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. See 18 U.S.C. § 3103a(b)(2).

34. I further request that the Court direct AT&T Wireless to disclose to the government any information described in Attachment B that is within the possession, custody, or control of AT&T Wireless. I also request that the Court direct AT&T Wireless to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with AT&T Wireless's services, including by initiating a signal to determine the location of the Target Cell Phone on AT&T Wireless's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate AT&T Wireless for reasonable expenses incurred in furnishing such facilities or assistance.

35. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

36. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

*Nathan Holbrook*

NATHAN HOLBROOK
Special Agent
Federal Bureau of Investigation


Subscribed and sworn to before me on May 12 , 2023 by reliable electronic means, specifically, FaceTime video conference.

*Stephanie K. Bowman*

HONORABLE STEPHANIE K. BOWMAN
UNITED STATES MAGISTRATE JUDGE

## <u>ATTACHMENT A</u>

**Property to Be Searched**

1. The cellular telephone assigned call number **513-668-6630, with IMSI: 310410262344029 and IMEI: 3538901085912822,** with listed subscriber(s) **Shoo Shells (**the "Target Cell Phone"), whose wireless service provider is **AT&T Wireless**, a company headquartered at **11760 U.S. Highway 1, Suite 300, North Palm Beach, FL 33408.** .

2. Records and information associated with the Target Cell Phone that is within the possession, custody, or control of **AT&T Wireless.**

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be Disclosed by the Provider**

All information about the location of the Target Cell Phone described in Attachment A
for a period of thirty days, during all times of day and night.  "Information about the location of
the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude
data, and other precise location information, as well as all data about which "cell towers" (i.e.,
antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers)
received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter,
"Location Information") is within the possession, custody, or control of **AT&T Wireless**,
**AT&T Wireless** is required to disclose the Location Information to the government.  In addition,
**AT&T Wireless** must furnish the government all information, facilities, and technical assistance
necessary to accomplish the collection of the Location Information unobtrusively and with a
minimum of interference with **AT&T Wireless**'s services, including by initiating a signal to
determine the location of the Target Cell Phone on **AT&T Wireless**'s network or with such
other reference points as may be reasonably available, and at such intervals and times directed by
the government.  The government shall compensate **AT&T Wireless** for reasonable expenses
incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property.  In approving this
warrant, the Court finds reasonable necessity for the seizure of the Location Information.  *See* 18
U.S.C. § 3103a(b)(2).

## II.     Information to Be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 2251(a) & (e) Sexual Exploitation of Children and 18 U.S.C. § 1591(a)(1) & (b)(2) Sex Trafficking of Minors involving **Kelly Richards.**

All information described above in Section I that will assist in arresting **Kelly Richards**, who was charged with violating Title 18, U.S.C. §§ 1591 (Sex Trafficking of Children) and Title 18 U.S.C. § 2251 (Sexual Exploitation of Children) on today's date, and is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.